UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLIVIA A. JIMENEZ, | Case No. 1:17–cv–00757–SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |

_____/

## I.  INTRODUCTION

On May 30, 2017, Plaintiff Olivia A. Jimenez ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---
[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7 & 8.)

## II. BACKGROUND

On March 13, 2013, Plaintiff filed claims for DIB and SSI, alleging she became disabled on February 1, 2010, due to fibromyalgia, bipolar disorder, "POD", asthma, high cholesterol, and migraines. (Administrative Record ("AR") 16, 213–23, 235.) Plaintiff was born on February 16, 1972, and was 37 years old on the alleged disability onset date. (AR 213.) Plaintiff has completed one year of college and previously worked as an office technician from 2002 to 2009, an accounting clerk from 2001 to 2002, and a human resources assistant from 1994 to 2001. (AR 236–37.)

**A.     Relevant Medical Evidence[2]**

    **1.     Physical**

        **a.     Treating Physician Dr. Sumeet Bhinder, M.D.**

On May 14, 2010, Plaintiff presented to Sumeet Bhinder, M.D., complaining of joint swelling and joint pain. (AR 304.) Plaintiff reported she took 15 to 20 minutes to "get up in the morning and get going." (AR 304.) Dr. Bhinder's joint examination found severe tenderness over bilateral ankles, but was otherwise unremarkable. (AR 304.) Plaintiff returned to Dr. Bhinder several more times between May and August 2010 (AR 293–303) and Dr. Bhinder prescribed Plaintiff Lyrica following her appointment on June 15, 2010 (AR 300). On August 18, 2010, Plaintiff reported she was no longer experiencing significant fatigue, her joint pain was better, and activities did not aggravate her pain. (AR 293.) Plaintiff also reported her morning stiffness only lasted 0 to 15 minutes and she had a positive response to the steroid Prednisone, but the inflammation was returning. (AR 293.) Dr. Bhinder noted that Plaintiff's inflammation markers were normal. (AR 293.)

        **b.     Treating Physician Dr. Sadegh Salmassi, M.D.**

On September 26, 2011, Plaintiff presented to Sadegh Salmassi, M.D., complaining of migraine headaches as well as pain on her left ankle and swelling of both legs. (AR 458.) Dr. Salmassi found marked tenderness at Plaintiff's ankle joints, but no swelling, redness, or heat at

---

[2] As Plaintiff's assertion of error is limited to the ALJ's consideration of her alleged pain symptoms, only evidence relevant to this argument is set forth in this Order.

2

the ankle joints. (AR 460.) Dr. Salmassi ordered x-rays of both ankles and Plaintiff returned to Dr. Salmassi on December 5, 2011 to review the results, which revealed normal, bilateral ankles. (AR 452.) Plaintiff complained of losing balance while standing and continued pain and swelling of her ankles. (AR 452.) Upon examination, Dr. Salmassi found Plaintiff's ankles to be "purpleish in color and very cold and tender to the touch." (AR 454.)

On February 9, 2012, Plaintiff returned to Dr. Salmassi complaining of migraines, pain in her hip joints, and pain "all over her body." (AR 445.) Dr. Salmassi's examination revealed Plaintiff to be markedly tender at her left hip and moderately tender all over her body. (AR 447.) Dr. Salmassi added fibromyalgia to Plaintiff's list of diagnoses. (AR 448.) Plaintiff visited Dr. Salmassi six times between March and December 2012 and Plaintiff's symptoms did not materially change. (*See* AR 417–44.) On March 18, 2013, Plaintiff returned to refill her medication and denied any muscle pain or stiffness, joint pain or stiffness, or decreased movement or activity. (AR 411.) However, Dr. Salmassi's examination found Plaintiff to be "practically tender" on most of her musculoskeletal areas including joints and muscles. (AR 415.) As of August 20, 2013, Plaintiff's symptoms remained unchanged since her March 2013 appointment according to Dr. Salmassi's treatment notes. (AR 579.)

On May 6, 2013, Dr. Salmassi completed a physical and mental assessment of Plaintiff's ability to work. (AR 603–05.) Among other restrictions, Dr. Salmassi opined Plaintiff was only capable of standing or walking or sitting for less than two hours total during the day, could never lift more than ten pounds, and was incapable of balancing, climbing, kneeling, crouching, or crawling. (AR 603–04.) Dr. Salmassi also concluded Plaintiff was unable to perform any work or training due to severe depression. (AR 605.)

### c. Consultative Examiner Dr. Kenneth Hsu, M.D.

On July 24, 2013, Kenneth Hsu, M.D., completed a rheumatology evaluation of Plaintiff at the request of Dr. Salmassi. (AR 483.) Dr. Hsu noted plaintiff experienced "mild squeeze pain in both hands," chronic swelling in both ankles, and pain in both knees and lower back with standing. (AR 484.) X-rays of Plaintiff's hands, knees, left hip, lumbar spine, ankles, and feet yielded no irregular findings, except that the left hip x-ray revealed bilateral hip osteoarthritis.

(AR 487–95.)

### d. Treating Physician Dr. Ajitpal S. Tiwana, M.D.

On April 2, 2014, Plaintiff presented to Ajitpal Tiwana, M.D., to establish care. (AR 677.) Plaintiff reported back pain, pain in muscles or joints, and depressive symptoms. (AR 677.) Dr. Tiwana noted Plaintiff was alert and oriented and exhibited normal range of motion in all four extremities. (AR 678.) Following Dr. Tiwana's examination, Plaintiff's diagnosis included primary fibromyalgia syndrome, unspecified anxiety state, and bipolar disorder. (AR 678.) While Plaintiff continued to report pain in her legs and ankles during some subsequent appointments, at her appointments on September 18, 2014, October 7, 2014, January 6, 2015, and April 22, 2015, Plaintiff reported no back pain, no pain in muscles or joints, and no depressive symptoms. (AR 660, 662, 664, 666.)

### 2. Kern County Mental Health Department

On May 29, 2012, Plaintiff presented to the Kern County Mental Health Department ("KCMH") seeking medication and counseling for bipolar disorder. (AR 378.) Plaintiff stated she was depressed five to seven days a week; experienced crying spells, racing thoughts, and "manic" episodes with anger; spent excessive time on the computer; and had low energy and motivation. (AR 378.) Plaintiff also reported that she took Zoloft in the past, which helped with her symptoms. (AR 378.) Her doctor found her to be attentive, with normal ability to concentrate, average intelligence, and good judgment. (AR 384.) Plaintiff returned to KCMH on July 19, 2012 and she was prescribed Lamictal to stabilize her mood and decrease irritability, Lithium to help with her racing thoughts and sleep, and Klonopin for anxiety. (AR 394.) On August 3, 2012, Plaintiff reported "marked improvement" of manic symptoms, anxiety, and sleep as a result of the medications and her doctor noted in the "Response to Treatment" section of her treatment notes that her functioning ability, goals, and symptom relief were "much improved." (AR 396, 400.) However, on January 4, 2013, Plaintiff reported the medication was becoming less effective and she noticed an increase in her symptoms again. (AR 319.)

On February 5, 2013, Rene Delgadillo, M.D., performed a "Psychiatric Evaluation/Assessment" of Plaintiff. (AR 312.) Plaintiff complained that her crying spells,

4

irritability, and depression were returning again. (AR 312.) Dr. Delgadillo noted Plaintiff displayed no abnormal movements or psychomotor agitation, her registration/recall was 3/3, she had good insight and judgment, and she could spell "world" backward and perform simple math. (AR 314.) Dr. Delgadillo concluded Plaintiff's symptoms could be improved by medication, psychotherapy, and continued support from family. (AR 315.)

When Plaintiff returned to Dr. Delgadillo on March 26, 2013, Plaintiff reported she was sleeping well and no longer angry or irritable, but still felt depressed. (AR 556.) Plaintiff reported similar progress with psychiatric symptoms on April 30, 2013. (AR 368.) At both the March and April 2013 appointments, Dr. Delgadillo stated in his treatment notes that Plaintiff's depression was "minimally worse," but her anxiety and irritability were "much improved." (AR 372, 560.) On May 14, 2013, Plaintiff reported her depression and anxiety were better, she was able to control her irritability and use her coping skills, and she only experienced one crying spell in the previous several weeks. (AR 350.) Plaintiff also stated in her "Annual Mental Health Reassessment" in May 2013 that she was "basically to the point to be able to do it all myself without meds, but I'll be [sic] definitely need to continue therapy." (AR 508.)

On June 11, 2013, Dr. Delgadillo completed a "Short-Form Evaluation for Mental Disorders" for Plaintiff and found Plaintiff's symptoms had improved with psychotropic medication. (AR 473–76.) Dr. Delgadillo observed normal motor activity and no behavior disturbances. (AR 473.) Dr. Delgadillo opined that Plaintiff's ability to (1) understand, remember, and carry out complex and simple instructions; (2) maintain concentration, attention, and persistence; and (3) perform activities within a schedule and maintain regular attendance, were good, meaning that Plaintiff's mental disorder did not significantly limit her from consistently and usefully performing the activities. (AR 475.) Dr. Delgadillo further opined that Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and respond appropriately to changes in a work setting were fair, meaning Plaintiff's capacity to perform these activities was impaired, but the degree/extent of the impairment needed to be further described. (AR 475.) Dr. Delgadillo did not further describe the extent of Plaintiff's impaired ability to complete a normal workday or workweek or respond to changes in a work

setting.

On June 25, 2013, Dr. Delgadillo's treatment notes state Plaintiff's depression was "much improved" and Plaintiff had been using her coping skills to deal with intermittent episodes of irritability. (AR 542.) On August 6, 2013, Plaintiff reported she was sad and depressed because she was thinking about her brother who passed away, but she was sleeping eight hours a night and Dr. Delgadillo described her depression as "minimally worse" due to her psychosocial stressors. (AR 532–33, 536.) On January 28, 2014, Plaintiff reported having panic attacks once a week for the last two months due to a change in her living situation. (AR 639.) Dr. Delgadillo again noted Plaintiff's mood was "minimally worse" due to her psychosocial stressors. (AR 643.)

At Plaintiff's next visit on June 6, 2014, a different doctor with KCMH noted Plaintiff was much improved on the current medication regime overall and since the previous visit. (AR 636.) On August 18, 2014, Plaintiff reported improved energy during the day and sleep with Valium, but still some anxiety, irritability, and mood swings. (AR 625.) Similar to the findings in June, Plaintiff's treatment notes again show she was much improved on the current medication regime. (AR 629.)

Plaintiff reported her mood was "more negative" on October 21, 2014 (AR 611), but on July 20, 2015 Plaintiff reported she was doing well and her depression was stable. (AR 737.) Plaintiff also stated she had developed coping skills to deal with her depression symptoms and was "happy to work on simplifying her meds." (AR 737.) On August 14, 2015, Plaintiff reported feeling stressed and fatigued; her treatment notes state her depression had improved. (AR 730, 734.)

**B.  Administrative Proceedings**

The Commissioner denied Plaintiff's applications for DIB and SSI initially on July 10, 2013, and again on reconsideration on January 24, 2014. (AR 114–18, 123–27.) Consequently, on March 21, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 129–30.) At the video hearing on November 20, 2015, Plaintiff appeared with counsel by video from Bakersfield, CA and testified before an ALJ sitting in San Francisco, CA as to her alleged disabling conditions. (AR 16, 42–61.)

### 1. Plaintiff's Testimony

Plaintiff testified she began seeing a doctor for her psychiatric issues in May 2012. (AR 46–47.) Plaintiff further testified that counseling "helped a great deal," but she definitely needed to stay on her medications. (AR 47.) Plaintiff explained that she has anxiety that causes chest pains and experiences dizziness that recently caused her to fall and go to the emergency room. (AR 47–48.) She also experiences manic episodes that are terrifying to her and her family. (AR 48.)

Plaintiff takes several medications to manage her psychiatric issues, and, according to Plaintiff, the medications are helpful. (AR 48–49.) Plaintiff also explained that the medications have side effects, which include sleepiness and making her "a little bit shaky." (AR 49.)

Plaintiff testified that, as a result of her mental impairments, she would not be able to handle any job eight hours a day, five days week. (AR 50.) Specifically, Plaintiff stated it is hard for her to stay on task and she is not good at making decisions. (AR 50.) Plaintiff further explained that she has memory issues that would interfere with working an eight-hour day. (AR 50.)

With respect to her physical impairments, Plaintiff testified that she was diagnosed with fibromyalgia and prescribed Lyrica. (AR 51.) She still has problems with the fibromyalgia, which mainly include tenderness on her shoulders, wrists, hip, and ankles. (AR 51.) Plaintiff testified she has difficulty using her hands because she cannot grip anything with a lot force and if she does grip something with force, her hands become shaky and she starts getting "like a palsy." (AR 51–52.) Plaintiff also testified that she suffers from migraine headaches once or twice a month. (AR 54.) On average, the migraines last anywhere from two hours to four hours, according to Plaintiff. (AR 54.)

On an average day, Plaintiff wakes up and picks things up around the house. (AR 52.) She vacuums her room, but cannot stay on her feet for too long because they start burning. (AR 52.) Plaintiff can assist with laundry, but cannot put the clothes in or take them out of the washing machine or dryer herself. (AR 53.) Generally, Plaintiff can do 20 to 25 minutes of activity and then must take a break for 15 to 20 minutes before performing any activities again. (AR 53.) She testified that she finds it necessary to elevate her legs every day for at least an hour and sometimes

up to the entire evening depending on the swelling. (AR 55.)

Plaintiff testified that she did not feel she could return to any of the jobs she had in the last 15 years because of problems with her memory and her inability to walk as much as those jobs required. (AR 56–57.)

### 2. Vocational Expert's Testimony

The Vocational Expert ("VE") identified Plaintiff's past work as an executive secretary, Dictionary of Operational Titles ("DOT") code 169.167-014, which was highly skilled work with a specific vocational preparation ("SVP")[3] of 8 and sedentary physical demand; and as a human resources assistant, DOT code 209.362-026, which was semi-skilled with an SVP of 5 and sedentary physical demand. (AR 58.)

The ALJ then asked the VE three hypothetical questions. First, the ALJ asked the VE to consider a person of Plaintiff's age, education, and work experience, who is limited to medium work with no more than frequent climbing, balancing, stooping, kneeling, crouching, and crawling. (AR 58.) The ALJ then asked the VE whether, given this, such a person could perform any of Plaintiff's past work. (AR 58.) The VE testified that such a person could perform Plaintiff's past relevant work. (AR 59.)

The ALJ then asked the VE a second hypothetical question considering the same person with the same capabilities as outlined in the first hypothetical, but who is limited to simple, routine work that is nonpublic. (AR 59.) The ALJ asked the VE if there would be any work available for such a person. (AR 59.) The VE testified that such a person could perform the following unskilled jobs with medium physical demands: (1) hand packager, DOT 920.587-018, SVP of 2, for which there exists in excess of 5,500 jobs statewide, and over 43,000 nationally; (2) hospital cleaner, DOT 323.687-010, SVP of 2, for which there exists in excess of 14,000 jobs statewide, and over 135,000 nationally; and (3) kitchen assistant, DOT 318.687-010, SVP of 2, for which there exists in excess of 41,000 jobs statewide, and over 275,000 nationally. (AR 59.)

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

The ALJ asked the VE a third hypothetical question considering a person with the limitations specified in Dr. Salmassi's May 2013 physical and mental assessment of Plaintiff's ability to work, which included standing and walking zero to two hours a day and sitting zero to two hours a day, as well as being off task at least 20% of the time. (AR 60.) The ALJ asked the VE if there would be any work available for such a person. (AR 60.) The VE responded that there would be no jobs available under that scenario. (AR 60.) The VE explained that the sitting and standing in combination is less than a full day of work and being off task up to 20% of the time for any job would be prohibitive. (AR 60.)

**C.     The ALJ's Decision**

In a decision dated January 5, 2016, the ALJ found that Plaintiff was not disabled. (AR 16–23.) The ALJ conducted the five-step disability analysis set forth 20 C.F.R. §§ 416.920 and 404.1520. (AR 18–23.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 1, 2010. (AR 18.) At Step Two, the ALJ found that Plaintiff had the severe impairments of obesity, bipolar disorder, fibromyalgia, and polyarthritis. (AR 18.) However, at Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 22–23.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC")[4]

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she can frequently balance, climb, stoop, kneel, crouch and crawl; and can perform simple routine tasks in a nonpublic environment.

(AR 20.) The ALJ determined that, given her RFC, Plaintiff was unable to perform any past relevant work (Step Four), but that Plaintiff was not disabled because she could perform a significant number of other jobs in the local and national economies, specifically hand packager,

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

hospital cleaner, and kitchen dishwasher (Step Five). (AR 22–23.) In reaching her conclusions, the ALJ also determined that Plaintiff's subjective complaints were not entirely credible. (AR 21.)

**D.    Plaintiff's Appeal**

On May 30, 2017, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. (Doc. 1.) Plaintiff claims that the ALJ erred because the ALJ failed to articulate clear and convincing reasons for discrediting Plaintiff's subjective complaints. (*See generally* Doc. 17 at 7–15.)

## III.    SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV.    APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listings of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting Plaintiff's testimony regarding her subjective complaints. (Doc. 17 at 7–15.) The Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 18 at 4–10.)

///

///

## A. The ALJ Properly Found Plaintiff Less Than Fully Credible.

### 1. Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)).

**2. Analysis**

The ALJ properly found Plaintiff's credibility was undermined by Plaintiff's positive responses to treatment and medication as well as the objective medical evidence.[5] (AR 21.)

**a. Improved Symptoms**

The ALJ found that Plaintiff's physical and mental impairments were well maintained by medication and treatment. (AR 21.) The ALJ was entitled to reject Plaintiff's credibility based on her successful response to treatment and medication. *See Gerard v. Astrue*, 406 F. App'x 229, 232 (9th Cir. 2010) (holding that the ALJ properly discounted the plaintiff's asserted severity of his anxiety and depression, observing in part that the plaintiff "was responding to psychotherapy and medication"); *Lenex v. Colvin*, No. 1:15–cv–00581–BAM, 2016 WL 5404437, at *6 (E.D. Cal. Sept. 27, 2016) (finding no error where the ALJ noted the plaintiff's depression was stable and pain was markedly improved with her current pain regimen); *Clemmons v. Astrue*, No. 1:09–cv–0469–SKO, 2010 WL 3715136, at *7 (E.D. Cal. Sept. 16, 2010) ("[T]he ALJ's consideration of Plaintiff's improvement when she took her pain medication as noted by Dr. Evans in February 2005 . . . was a clear and convincing reason to discount Plaintiff's testimony.").

Ample evidence demonstrated that medication and other treatment had effectively controlled Plaintiff's symptoms and the ALJ identified the evidence with specific citations to exhibits and pages in record. The ALJ noted Plaintiff's physical pain was "at least somewhat controlled" by medications. (AR 21.) The ALJ also noted Plaintiff "responded well" to medicine prescribed for her anxiety and depression and her treating physicians generally agreed she "has been responsive to treatment." (AR 21.) The ALJ cited the treatment notes of Plaintiff's treating physician Dr. Bhinder, who noted that Plaintiff reported she had a positive response to the steroid

---

[5] The ALJ did not err by failing to consider all the factors in Social Security Ruling ("SSR") 96-7p (superseded by SSR 16-3p) as Plaintiff suggests. (Doc. 17 at 15.) The ALJ need only cite to clear and convincing evidence in the record and courts regularly uphold ALJ decisions that discount a plaintiff's credibility supported by only two factors. *See, e.g.*, *Hardin v. Comm'r of Soc. Sec.*, No. 2:15–cv–2435–KJN, 2017 WL 1022808, at *9–10 (E.D. Cal. Mar. 15, 2017); *Yacoub v. Colvin*, No. 1:14–cv–00884–SKO, 2016 WL 541407, at *8–9 (E.D. Cal. Feb. 11, 2016); *Frieson v. Colvin*, No. 1:12–cv–01320–SMS, 2013 WL 4500477, at *11–12 (E.D. Cal. Aug. 22, 2013).

13

Prednisone, her joint pain was feeling better, and her ability to do things in general was better. (AR 21, 293.) The ALJ also cited the opinion of Plaintiff's treating psychiatrist Dr. Delgadillo, who concluded Plaintiff's symptoms could be improved by medication, psychotherapy, and continued support from family. (AR 21, 315.) Dr. Delgadillo's treatment notes for Plaintiff's May 14, 2013 appointment also state in the "Response to Treatment" section that Plaintiff's depression is "much improved" even though Plaintiff experienced intermittent episodes of irritability. (AR 21, 360.) The ALJ also quoted statements in the record from Plaintiff in which she reported "marked improvement of her symptoms" to her doctors and further stated that she thought she could cope with the symptoms without medicine, but wanted to continue therapy. (AR 21, 396, 508.)

Despite the ALJ's specific citations to the record showing improvement in Plaintiff's symptoms, Plaintiff contends that the record as a whole demonstrates ongoing physical and mental symptoms. (Doc. 17 at 11–13.) However, the record contains further evidence of Plaintiff's positive response to medications and treatment, which demonstrates Plaintiff experienced more than the mere "occasional indications of improvement" she alleges. (Doc. 17 at 13.) For example, when Plaintiff visited Dr. Salmassi on March 18, 2013, to refill her medication, she denied any muscle pain or stiffness, joint pain or stiffness, or decreased activity or movement. (AR 411.) Dr. Salmassi refilled the prescriptions and recommended scheduling a follow-up appointment three months later (i.e., June 2013), but the record shows Plaintiff did not visit Dr. Salmassi again for five months until August 2013. (AR 416, 579.) At the August 2013 appointment, Dr. Salmassi's treatment notes state Plaintiff's symptoms remained unchanged since her March 2013 appointment, except for her complaint of pain and swelling in her left ankle. (AR 579.) Further, Plaintiff reported no back pain, no pain in muscles or joints, and no depressive symptoms to treating physician Dr. Tiwana at her appointments in September and October 2014 and January and April 2015. (AR 660, 662, 664, 666.)

The record includes similar evidence related to Plaintiff's improvement in her mental symptoms. For example, Plaintiff's treatment notes from KCMH in June and August 2014 show that Plaintiff was much improved on the current medication regime and on August 18, 2014,

14

Plaintiff reported improved energy during the day and much improved sleep with Valium. (AR 625, 636.) Additionally, on July 20, 2015, Plaintiff reported she was doing well and her depression was stable; she also stated she had developed coping skills to deal with her depression symptoms and was "happy to work on simplifying her meds." (AR 737.)

To be sure, the record also contains some contrary evidence, such as Plaintiff's complaints of pain all over her body and fluctuating mental impairments. However, "credibility determinations are the province of the ALJ" and it is the function of the ALJ to resolve any ambiguities. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (finding no error with the ALJ's credibility determination even though the ALJ "could easily have relied on other nonmedical evidence in the record to reach the opposite conclusion"); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). Here, by citing to specific portions of the record demonstrating that Plaintiff's mental and physical impairments could be managed with treatment and medication, the ALJ set forth clear and convincing reasons for discounting the credibility of Plaintiff's subjective complaints. *Clemmons*, 2010 WL 3715136, at *7. Thus, the ALJ satisfied her burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Although Plaintiff may disagree with the specific findings, the findings were supported by clear and convincing evidence in the record and the Court will not second-guess them. *Id.* at 959.

### b. Objective Medical Evidence

The ALJ did not err in finding that the objective medical evidence fails to support Plaintiff's subjective complaints. While subjective symptom testimony cannot be rejected solely on the ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining Plaintiff's credibility. *Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[L]ack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis.").

15

Here, the ALJ discounted Plaintiff's credibility, in part, because Plaintiff's allegations of severe symptoms were not supported by the clinical evidence. Specifically, the ALJ cited by exhibit and page number to the treatment notes of Dr. Bhinder from July 2010, which state that Plaintiff's laboratory tests were normal and her x-rays "revealed no significant arthritic abnormalities." (AR 21, 294.) The ALJ also cited by exhibit number to Plaintiff's x-ray studies from July 2013, which showed bilateral hip osteoarthritis, but no significant arthropathy or acute abnormality and no visible soft tissue swelling in Plaintiff's bilateral feet, ankles, knees, and hands. (AR 487–90, 492–95.) The ALJ noted that despite Plaintiff's testimony that she had difficulty gripping objects and often shakes, there was little evidence in the record to support these complaints. (AR 21.)

Plaintiff bears the burden of proving the ALJ erred and she failed to show why the ALJ's citation to these portions of the record was improper or where in the record there was substantial evidence of Plaintiff's debilitating shaking or difficulty gripping objects. Accordingly, Plaintiff failed to satisfy her burden and the ALJ did not err by relying on the objective medical evidence in the record to discredit Plaintiff's testimony. *Brown v. Berryhill*, No. 1:16–cv–00776–SKO, 2018 WL 573371, at *12 (E.D. Cal. Jan. 26, 2018) (affirming the ALJ's decision where the ALJ discounted Plaintiff's credibility because, in part, the plaintiff testified to severe pain throughout her body, despite "scant objective clinical findings"); *Babick v. Comm'r of Soc. Sec.*, No. 2:14–cv–1312–KJN, 2015 WL 5009064, at *6 (E.D. Cal. Aug. 20, 2015) ("Plaintiff's subjective complaints as to this impairment without further evidentiary support from the objective medical evidence are insufficient to establish its existence."); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.") (alterations in original) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

Plaintiff also contends that the ALJ erred by rejecting Plaintiff's testimony regarding her physical impairments because Plaintiff suffers from fibromyalgia, which the Ninth Circuit has found to be a disease that "eludes . . . measurement." (Doc. 17 at 12 (citing *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004)). However, the ALJ expressly incorporated Plaintiff's

16

fibromyalgia diagnosis into her assessment when she stated: "Taking into consideration the claimant's obesity and fibromyalgia, I find she remains capable of a slightly reduced range of medium work." (AR 21.) Thus, the ALJ did not wholly reject Plaintiff's testimony regarding her physical impairments as Plaintiff contends (Doc. 17 at 12), but only disagreed with Plaintiff to the extent Plaintiff alleged she was disabled by her symptoms. This is a valid basis for discounting Plaintiff's testimony as to complete disability based on fibromyalgia, and therefore, the ALJ adequately accounted for Plaintiff's fibromyalgia diagnosis in evaluating Plaintiff's credibility. *Jenkins v. Colvin*, No. 1:15–cv–01135–SKO, 2016 WL 4126707, at *10 (E.D. Cal. Aug. 2, 2016) (rejecting the plaintiff's argument that the ALJ improperly discredited the plaintiff's credibility where the ALJ incorporated the plaintiff's fibromyalgia impairment into the RFC assessment by limiting the plaintiff to light work); *see also DeBerry v. Comm'r of Soc. Sec. Admin.*, 352 F. App'x 173, 177 (9th Cir. 2009) (holding the ALJ properly discredited the plaintiff's testimony about the severity of her fibromyalgia symptoms where the ALJ found the plaintiff's "allegations of disability were disproportionate to the objective findings in the medical record, noting, among other things, that the medical records showed acute periods of illness of only short duration").

     Similar to Plaintiff's complaints of disabling pain and other physical symptoms, the ALJ also cited objective medical evidence in the record that fails to support Plaintiff's subjective complaints of disabling symptoms from mental impairments. Specifically, the ALJ cited by exhibit and page number to a "Psychiatric Evaluation/Assessment" completed in February 2013 by Dr. Delgadillo, who found the precipitating factors that led to Plaintiff's psychiatric symptoms were financial problems and unemployment. (AR 21, 314.) Dr. Delgadillo's evaluation cited by the ALJ also noted Plaintiff displayed no abnormal movements, her registration/recall was 3/3, she had good insight and judgment, and she could spell "world" backward and perform simple math. (AR 21, 314.) The ALJ also cited to Dr. Delgadillo's treatment notes from April 2013 stating that Plaintiff was no longer angry or irritable, and able to control her crying spells. (AR 21, 368.) The ALJ also stated that Dr. Delgadillo noted in a June 2013 "Short-Form Evaluation for Mental Disorders" that Plaintiff had deficits in

17

concentration and social functioning, but Dr. Delgadillo did not identify any work preclusive limitations. (AR 21, 475.)

Plaintiff contends the ALJ erred by finding that Dr. Delgadillo did not identify any work preclusive limitations. (Doc. 17 at 14.) Plaintiff reasons that Dr. Delgadillo found Plaintiff's ability to complete a normal workday or workweek and respond appropriately to changes in a work setting to be "fair," which could be considered either a "marked" or "moderate" limitation in Social Security terms. (Doc. 17 at 14.) Notably, the check-the-box form completed by Dr. Delgadillo defines "fair" as "the capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described" and Dr. Delgadillo did not further explain the extent of Plaintiff's impairment. (AR 475.) While ambiguity may exist as to what Dr. Delgadillo meant by "fair" and it is not clear whether Dr. Delgadillo thought Plaintiff's impairment would preclude her from working, any error would be harmless because the ALJ specified ample objective evidence in the record that contradicted Plaintiff's subjective complaints. (*See e.g.*, AR 21 (citing AR 294 (treatment notes of Dr. Bhinder), 487–95 (unremarkable x-ray results); 314 (Dr. Delgadillo's "Psychiatric Evaluation/Assessment"), 368 (treatment notes of Dr. Delgadillo).) Moreover, Plaintiff's improvement with medication and treatment provides independent clear and convincing evidence to discredit Plaintiff's testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal.") (alterations in original) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)); *Wells v. Comm'r of Soc. Sec.*, No. 1:17–cv–0078–SKO, 2017 WL 3620054, at *10 (E.D. Cal. Aug. 23, 2017) ("While the ALJ erred in providing one invalid reason for the credibility finding . . . that error was harmless, as substantial evidence still supports the ALJ's credibility determination notwithstanding the single errant rationale."). Accordingly, the ALJ did not err by discrediting Plaintiff's testimony regarding her subjective complaints.

# VI. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: **June 26, 2018** /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE